In Re Goody's Family Clothing, Inc. et al., number 09-2168, Mr. Gillardy, Mr. Wittenberg, and Ms. Hoard. Good afternoon, Your Honor. You used to be over there, didn't you? I think I sat in that chair. Oh, no, that side. Right, but I did go to see my former judge's courtroom, Your Honor. For the record, Your Honor, Greg Gillardy of Skadden Arps on behalf of the appellant, Goody's Family Clothing, Inc. Your Honor, I wish to argue for eight minutes and then reserve seven minutes for rebuttal. That's fine. Thank you, Your Honor. Your Honor, the Court is facing what I think is a very important decision. There are some, there are probably four circuits that I've appeared in and four circuits that have different views. Your, the Third Circuit has ruled on the issue with respect to Section 365-D3, and we think that Montgomery Well, that's very different facts than Montgomery Ward, correct? I believe that they are different facts, but I believe that the underlying principle relied on in the Montgomery Ward decision actually does, in fact, resolve this issue. Your Honor, as we've set out Why don't you go through the facts of Montgomery Ward? Because Montgomery Ward was, there was sent out post-petition a bill for pre-petition, is that correct? Correct. And this is a pre-petition statement, billing statement, for what, for this case's purposes, a stub period that is post-petition. Correct, Your Honor. Isn't that the inverse? Well, it's the inverse, but here is where I think Montgomery Ward's ruling is actually the important one. When the Court looked to the words in 365-D3, it looked to the word obligation. But did Montgomery Ward specifically deal with the issue before us that three, in your case, for non-residential leases for this stub period, that 365-D3 is all you look at and you cannot look at 503? No, it did not, Your Honor. So we still have the issue open? You still, absolutely, Your Honor, you still have the issue open. But when we look as to what it did decide with respect to obligations and what the Court understood when it said that it may, in fact, lead to strategic behavior, I think it clearly understood. And when it looked to the legislative history of 365-D3 and how that interplayed with what was formally 503-B analysis, I think it was well aware. I mean, to the extent it's helpful at all, the legislative history doesn't really help you here, does it? Well, I don't think it helps me, nor does it do, I think. Well, actually, I think it does help me, Your Honor, and let me go through. First of all, let's go to the issue and why I think Your Honor is correct. It's an open issue in the Third Circuit. What we have is an obligation that was first due and payable prior to the bankruptcy case, a rent payment due on the first of the month, a debtor filing sometime after the first of the month. And the question there is you used the property from the 9th to the 30th in order to stage what these were, going out of business sales? Correct, Your Honor. So these GOB sales, and it was ultimately successful enough that you realized a little over 105 percent of their value. Is that correct? A little over 105 percent of the cost of the goods, so there was still a loss, Your Honor. And if you hadn't been able to hold those sales in the stores and the malls, you would have had to have rented someplace to hold them, right? Correct, Your Honor. And that would have been an administrative expense, wouldn't it? Your Honor, it would have been if we had entered into a post-petition transaction with another facility to run those stores. That's absolutely correct, Your Honor. Well, and you can't get in the store without entering into a transaction to get into the store and use the store. Correct, Your Honor. We could have entered into a new contract. But you just stayed where you were and used the store. Correct, Your Honor. So in effect, I mean, in what Judge Roth is asking you about, it's the actual necessary costs and expenses of preserving the estate. Your Honor, we disagree with that, and we disagree with that for a few reasons. First of all, a lower court – Well, you perceived it was such, didn't you, that these were necessary? In other words, you would have just vacated those stores. Your Honor, we did perceive it as something that we would benefit the estate for by using those and actually getting value out of that. And that sounds like 503. Absolutely. Your Honor, but I guess you have to come to the first question that I think the court has to decide. Is 503B a rent-based, or does it give the court the authority to grant a rent-based claim? So if we look at –  Absolutely, Your Honor. And I don't disagree in what the legislative history – although whether it supports either side, again, the legislative history, I agree with Judge Ambrose, doesn't really support either side's argument. But what we do know about 365 was it was supposed to take away an argument about the value of those properties and what we're having landlord disputes. But, Your Honor, let's first go – Your point here is that somehow everything has to fit within 365. And yet you have, for certain leases, I guess, that are assumed, you have, what, 503B7? Well, you can cap certain claims, Your Honor. I think that's what you're talking about. But that deals with leases. So everything isn't under 365, is it? Well, but that's actually – you're right. And you can even look – but, again, the question is – and let's go through the statute. 365 does address the right to cure, assume and assign contracts. 365 does say if you assume, you cure. 365G does say if you reject, it's a rejection prior to the bankruptcy and then whether the claims, for example, the rejection damage claims, become pre-petition claims. Correct. We cover every single period under 365. Now we say, well, what would 503B add to that period? What, Your Honor – What 503B3 in this case is a stub period that you don't want to pay for. Well, it's not that you don't want to pay for it, Your Honor, because it does get paid. It either gets paid – It either gets paid as a reasonable expense or they have a general unsecured claim for, what, 21 days? Correct. And, Your Honor, think of what a ruling that 503B would allow. So, for example, I go in and let's take the Goody's situation. We rejected those leases. Those were above-market leases. Okay? We didn't – the value of those leases, therefore, was greater than what we believe the market value, though, to your question, Judge Roth. Clearly, we might have had to rent another premises and, again, there's the inconvenience. So what 503B does is if you're filling in the gap with 503B, Your Honor, we have this fight. What's the use? The old fight that you used to have before 365D3. But then let's assume that we decide and the restructuring goes well and I want to cure. Well, do I top up that claim? That's a claim. Then you have the interaction between 365B, where I have to cure, and 503B. What I think Congress intended with the cure and the rejection is that claim gets paid. The only issue is, is it going to get paid in little itty-bitty bankruptcy dollars if it's rejected? Or is it going to be paid full dollars? That weights the determination of the assumption or rejection. Part of the problem I have is that 365D3 is meant to be landlord-friendly, and it relieves the burden on landlords in securing payment from non-occupying debtors. You're trying to turn around and use it to preclude landlord recovery where there is occupancy, and that doesn't seem to make sense. Your Honor, I think what we're doing is we're taking the Montgomery Ward decision for what it says, namely it's an obligation. But as I said, Montgomery Ward is a different set of facts, and we both agree that it doesn't address this issue. But again, Your Honor, now we take 503B, and let's take what it would do in this circumstance. Well, let's get back to the statement you made that this rent was over market, this lease was over market. Under 503B, in the hearing to determine if the period of stub rent benefited the estate, the issue of whether this lease was above market or not would be considered. The issue of what would be a just payment for the use of the space, which you acknowledge benefited the estate, would be considered. Your Honor, actually, and Judge Sanchez just recently changed his view on that. He ruled that it was per se the rent. I'm not talking about what Judge Sanchez. I'm talking about the question I asked you. Well, but the question you've asked me on this particular appeal and this particular record, that issue would never come up because he said it was per se the value of the rent under the lease. So if you look at our brief, one of the aspects we say, if you rule that 503B does apply, this should be remanded for exactly the evidentiary hearing that Your Honor is discussing, namely is it above market, below market, and what is the fair market value for that? What's reasonable? Well, what's reasonable value for that? We would say it was not reasonable. It may end up being different. The interesting thing here, however, is that you picked up this lease after July 1, did you not? You continued to pay. Your Honor, we've come up. So if it was above market, you were still happy with it. No, Your Honor, that's actually not correct. Just because you're happy with it, 365D3 required me to not have any fight about whether the value was good or not good. 365D3 under Montgomery Ward required that I pay the amount of the face amount of that rent. Whether we thought it was below or above market, we were required to pay it. And, again, I think it's important for the court to understand. Back to my point about it's a landlord-friendly position, and you're trying to turn around and make it a landlord-not-friendly position. Your Honor, again, I see my time is, but 365D3 is clearly a landlord-friendly position. The implication of this Court's ruling in Montgomery Ward and 503B, which you're making essentially say is the entire code is landlord-friendly because not only does the landlord get the prepetition tax claim that happens to fall the day after filing, it gets an accrued 503B expense even for tax claims that could come due a year later. We'll have the 503B argument on the value. And it gets actually those claims that become timely obligations. But, in effect, what they're really saying is for the period that you occupied it, if we can prove that it benefited the estate and we think we can, then whatever the reasonable costs are of that benefit, we're entitled to prove them under 503. And, Your Honor, we disagree with that, and it's not unlike the leased equipment. When you have leased equipment, you may benefit from that equipment under the bankruptcy code and not pay for that use because you have a contract that says you pay before the filing. And there are many creditors whose property is in bankruptcy that you don't have to pay for a certain period of time and it awaits the ultimate decision to assume or reject. So leases are not all that much different. The landlord gets paid for the use. It may just get a prepetition unsecured claim under 365. It doesn't get a 503B claim. Counsel, I'd just like to know, am I correct in suggesting that you people were paid rent by HILCO, the liquidator? Your Honor, there was an obligation to reimburse us for the rent for that period of time. Ultimately, we did, in fact, recover that rent. Answer my question, yes or no, and then go on. The answer is yes, Your Honor. You were paid the equivalent of rent. We were paid the face amount of the rent for those properties that we were in. Correct, Your Honor. Thank you. Thank you, Your Honor. Mr. Wittenberg. Good afternoon. May it please the Court, my name is Nick Wittenberg. I represent one of the appellee landlords, Eastgate Mall. I'm maybe the only person in the room who has shopped at the Eastgate Mall. Oh, really? In Missoula, Montana? No, this one's in Chattanooga, Tennessee. Okay, because there is an Eastgate Mall in Missoula, Montana. Interesting. If you could just pick up the mic just a tad. Thank you. Is that better? That's great. I'm here with my co-counsel, Carol Hoard and Dwayne Werb, who are representing the other co- or other appellee landlords. There are two issues I'm going to address. The first issue, and that's whether a landlord can assert a 503-b-1 administrative expense claim for the fair, reasonable rental value associated with it. Is there anything you want to add to the question, other than the questions we asked Mr. Ghilardi? Not really, Your Honor. It's clear that the statute, the plain meaning of 365-b-3, and this Court's interpretation did not hold that 365-b-3 was the sole only recourse that a landlord could resort to to recover post-petition rent for the debtor in possession's post-petition use. In fact, the statute, 365-b-3, states that the debtor shall satisfy obligations arising under an administrative property from the petition date until the rejection date, notwithstanding 503-b-1. Every court that has considered the issue has construed the notwithstanding proviso to mean in spite of, without regard to. You don't have to jump through the books to do under 503-b-1. Right. Exactly. It doesn't supplant. It's another way. As this Court held in Montgomery Ward, it was intended, after considering the language, as well as the detail of the legislative history, it was intended to alleviate the burdens otherwise placed on 503. Maybe what's being argued is that there is a bit of an incongruity here, that why is it that on July 1, you actually pay rent for all the time thereafter that the lease continues to exist, but for the stub period from June 9 to June 30, you're not going to pay the rent. You're going to pay the reasonable expenses. And does that make sense? Is that what Congress really intended? I think when Congress adopted 365-b-3, it probably intended to make the rule that applied prior to that option, and that was a proration approach applied. But Montgomery Ward, I mean, that sort of goes into Mr. Ghilardi's argument that you don't look at proration under Montgomery Ward. That's right. Congress chose the words that it chose when it adopted 365-b-3, and this Court in Montgomery Ward construed the literal unambiguous language and held that the lease controls. But his point is that you look to the billing statement. If Montgomery Ward means that you look to the billing statement in all situations, and the billing statement was sent out on June 1, then there is this sort of never-never land that you have for the date of filing, June 9 to June 30. I have two points to make on that. First, the debtor confuses or equates the landlord's 503-b-1 claim for administrative expenses to a claim arising under the lease, and it's not. And the debtor makes a lot of the fact in its brief that the 365 is exhaustive and covers everything. First, 503-b-1 fills the gaps left by 365-b-3. Residential leases are outside the scope of 365-b-3. Expired leases are outside the scope of 365-b-3. Well, it's not just 503-b-1. It's probably 503-b-7 too, isn't it? That's right, 503-b-7. But if the debtor were an individual who leased his residence, he could file a Chapter 11, 12, or 13, and until confirmation of a plan wherein it rejects the lease, enjoy the use of the residence free of charge. Well, certainly when Congress adopted 365-b-3, it did not intend to do that. It intended only to give the landlord the – relieve the burden of the landlord during that – for that period of time. The debtor equates the landlord's claim to a claim under the lease. In fact, it cites that by virtue of 365-g, which deems the rejection of the lease to be a pre-petition, to be a pre-petition breach and give rise to a pre-petition unsecure claim. The fact that the lease provides that rent accrued on June 1, it's got to be a pre-petition claim. There wasn't an estate at that time. However, the Supreme Court – and this is a case cited by the debtor as well as the appellees – in National Labor Relations Board v. Pildesco, it specifically noted that upon rejection of a lease or an executory contract, the Supreme Court was discussing the priorities and nature of claims arising from the rejection of a contract. It gave rise to a pre-petition unsecured claim for breach of contract damages. But in the very next sentence, the court stated, if the debtor in possession elects to continue to receive benefits from the other party pending a decision to reject or assume, the debtor in possession is obligated to pay the reasonable rental value. A landlord, upon the rejection of a lease, can have two claims. A pre-petition unsecured claim for breach damages, the lost future rent. Right. But it can also have an administrative claim for the use and enjoyment of the premises pending the decision. Well, that's the issue before us now. That's exactly right. And they're not – 503 fills the gaps left by 365d3. The other thing is, is in the debtor's motion, the debtor filed a motion to conduct the GOV sales and retain Hilco as a liquidating agent. In that motion, it attached the agency agreement. That was part of the record. The debtor made it part of the bankruptcy court record. And the stated benefit for requesting that relief was that that agent, Hilco, was going to pay certain of the estate's expenses, including occupancy expenses, which were defined as per diem rent. The bankruptcy court approved that motion. In essence, with the motion, the debtor was acknowledging before the bankruptcy court that it was liable for the per diem rent for the stub period. Your Honor, I'll finish my point. Now the debtor, in response to the landlord's 503b1 administrative expense claim, says, wait a minute, the bankruptcy estate was never liable for that expense because 365d3. No, what he's saying is that they're liable under a different rubric or a different provision, but not under 503b1. Well, for the stub period, it's saying it's not liable. I think we've got it. Okay. Thank you. Thank you, Your Honor. I'll turn the argument over to Ms. Hoard. Thank you. Let's see if I can get that the right height. May it please the Court, I'm Carol Hoard, and I'm here. I represent Stafford Bluffton LLC, and I'm going to speak to the Court about the 503b and the satisfaction of that. I did want to address one point. A minute ago, Mr. Ghilardi was talking about that these were above-market leases, and there's none of that in the record. I'll just go ahead and tell you that. And actually, I don't think it makes any difference for today's purposes. Well, and there's a presumption. I mean, that would be the, I suppose, maybe an argument that would go to what is a reasonable amount if there were to be a 503b1 expense allowed. Yes, Your Honor. And my point in this is that there's a presumption that the lease rate prevails, and when Ms. Quirk, who was with Mr. Ghilardi at the time, was asked whether or not they intended to rebut that presumption, she said no, not at this time. I just wanted to point that out to the Court. They had the opportunity to do that and declined to do that. The argument, I mean, as I understand, is assuming 503b1 is allowed, they actually used the properties, did they not? Yes, Your Honor. There was actual use, occupancy. They failed to rebut the presumption as to the lease rate. And they realized 105 percent of cost. Yes, Your Honor. In addition to that, with respect to the idea that the rent came due on the 1st, I think it's an important point for the Court to note that after the petition date, as part of that motion to conduct the going-out-of-business sales, they asked the Bankruptcy Court to invalidate and change certain provisions in the leases. And that was the actual agreement under which they continued to occupy the premises post-petition, because you couldn't have the going-out-of-business sales under the lease provisions in these cases. You had to have the Bankruptcy Court invalidate those. And once they were invalidated, they were free to put HILCO in there, conduct their going-out-of-business sales under a modified lease, if you will. So they were able to do that. They went to the Bankruptcy Court and said, we need this relief. So the idea that the debtor in possession didn't receive consideration, didn't receive benefit. I don't know if you would call it a modified lease, but you're saying practically that's what it is. Yes, Your Honor. I mean, they sought that relief from the Bankruptcy Court, the debtor in possession did.  We haven't gotten to the transaction element. I don't know if the Court wants to hear about it. It's sort of an interesting thought to me. Under 503, and stop me if you all are interested in this, but under 503B, there's this transaction requirement that exists, and it's in this Court's O'Brien opinion, and it stems back from the original First Circuit opinion in Mammoth Mark. But in the Zagata opinion by this Court, they didn't really even talk about the transaction element. And I think the reason why that is is because when a debtor in possession elects to use and occupy the premises post-petition, it's almost assumed in that context. Because, remember, they don't have to use this property. They can reject that lease, not pro-tut to the petition date. Indeed, they did it with 12 of the locations. What did you use to tell the Court under Zagata that to the extent there was a 503B1 claim allowed, and here it was allowed, that what evidence did you give of the reasonable value of the property besides the lease? What other evidence did we present Judge Sanchi with other than the lease? Yes, the reasonable value of the use and occupancy of the land during that stub period. The only thing that was presented on that was a stipulation between the debtor and the three appellee landlords. It was a stipulation that we presented to the Court. There was no dispute about it. Judge Sanchi notes that. The district court noted it. And then in this new sportsman warehouse opinion. So, I mean, there was an award, right? Yes, and it was the exact stipulated amount by the parties. Okay. Does that answer your question? Did I follow the Court? Was that amount less than the lease amount? No, Your Honor. It was exactly the per diem lease amount, which was also the per diem set forth in that agency agreement on Exhibit 4.1 or 4.L. Although I guess I can ask Mr. Ghilardi, then why is he saying that the lease was above market? Got me. Okay. Other than the fact that there's been a general downtime in the economy and every tenant in America is asking their landlord for a rent break, I guess that would be sort of, but that was, this is over a year and a half ago. He does have a few facts on his side on that one. He does, but he didn't rebut the presumption. In fact, Mary in court, when she was specifically asked, does the debtor intend to rebut this presumption, she said no, not at this time. And that is in the record. They had an opportunity to do that and elected not to do it. It was not disputed. This is different than the sportsman's warehouse case. And that really concerns me because I think that the language in that case has been cherry picked by the debtor. And it misstates what Judge Sanchi said. He never once in those sportsman's warehouse cases, hey, remand it, let me take another look at it. He doesn't say that. He said it was undisputed. The use, the occupancy, the benefit, the reasonable value was all undisputed. Did Zagata address an unexpired lease? I don't think so, did it? No, Your Honor, not addressed. It addressed an expired lease, is that correct? That's right, Your Honor. Okay. And in that case, they couldn't. Is that a distinction with a difference or without a difference? I think it's without a difference. And I think that actually, as I think Mr. Wittenberg was trying to explain, that actually you still have the same use and occupancy under Section 503B, whether you've got a current lease or an unexpired lease. The benefit and the benefit to the estate, which is the purpose of an administrative claim, it's saying, hey, if you step in and you help that debtor in possession preserve its estate for the benefit of all creditors, you should get to be first in line or near the front of the line, if you will. Because that's the purpose of it. So whether it's under an expired lease, unexpired lease, that's the intent of Section 503B. The debtor doesn't get to use property free of charge. They just don't get to do it. And in this case, no dispute, lights on, going out of business sale, tremendous return, great benefit to the estate. This just isn't the right case for the court to, I think, do anything other than affirm based on the facts that's before it. I have a lot of time left, but I don't have anything to say. I have time for the questions. Thank you. Judge Alder, sir, any questions, further questions? No, I have no questions. Thank you, sir. Mr. Ghilardi? Your Honor, let me address. Maybe if you could start with Ms. Hord's argument first. Is there anything you want to address with respect to that? Sure. First, I'd start with the Zagata. I think it makes all the difference in the world, Your Honor, that it was an expired lease. Your Honor, our argument is that, statutorily speaking, that when it is an unexpired lease, 365 simply governs and governs exclusively. As Your Honor points out, Zagata was. That brings you back to the first argument. It brings us exactly back to the first argument. But I'm saying assume for the moment that there is a valid 365 or 503b1 claim. If there is, is there any argument that you have with regard to the amount that was ordered by the court? I guess if you stipulated, the answer is no. Well, no. Actually, Your Honor, that stipulation, she did read the whole stipulation. Not at this time, Your Honor. What we went into that hearing with was would we stipulate to the amount of the lease rent. We did stipulate to the amount of the lease rent that was in the documents. As to preserving our arguments to argue about the benefit to the estate, that was not the hearing. That was not an intentional hearing. What did Judge Sanchi hold with regard to that? He first held that since we stipulated to the market rent, that was fine. But then that's why the sportsman decision is actually incorrect. And even Sedeck in sportsman says, I held that the market rent was per se the value. And that's why he went out of his way in sportsman to say, I'm reversing myself, in essence, on the goodies appeal. And we were already up on that appeal because our position has always been 503B doesn't apply. And even if it applies, it's a two-pronged test. And then only if you go through that two-pronged test do you really have to get to the value. And we argued this matter on stipulated facts that said, yes, we're not disputing the per diem market rent. We've always taken the position that if you go back and go back to the old standard under 503B, we can contest above-below market. In your deal with Hilco, let's go back to Joe Gelbesser's question then. Why was it that you had segregated the rent payment that the amount that would have been identical to the rent payment for the 21 days from the 9th to the 30th? Your Honor, you've done this before with going out of business sales. So I will give you the argument I gave to the district court. First, this was a Tennessee corporation. We were likely to file in Tennessee, which would have been a Sixth Circuit. And as Your Honor knows from the pleadings, I would have had exactly the argument that I'm making here on that point. Second, I saw it as an insurance policy. We were told to file in the Third Circuit. Why would I take the risk and not get the funds from a third party to cover it, knowing full well, having been practicing in Delaware for 19 years since I left this court, to know that they're going to ask for this rent amount? Third, we specifically put in a provision, which everybody seems to ignore, that there were no third party beneficiaries of that contract. We knew, I knew, having done 19 years of debtor practice, that I would have this argument. So as a debtor's lawyer, what do I do? So if you prevail with regard to your argument that 365 is the sole place you look rather than 503B1, and they end up getting less than was actually held back by HILCO and given to you in a segregated sum, does HILCO get a rebate? No, they don't, Your Honor. And I made that point to the district court, and I made that to Judge Sanchi. That's smart lawyering, taking advantage of what we understand to be the circuit. There is nothing incorrect or improper. We made this argument. We think we're entitled to those funds. And if I, just like an insurance company, if I pay for insurance and don't get it, that's too bad. But if I have to be called upon to pay, I want it to cover the full amount of their claim. That's what we did going into this case, and that's what I do in every agency agreement because the circuits are split. Had I been forced to file in the Second Circuit, I would have had to pay it from day one. Had I been forced to file in the Sixth Circuit where we were planning, I would have gotten extra value. But that means I would have gotten value for letting them use my store. What was the aggregate amount held back? I think it's about a million dollars, Your Honor. Okay. So going first to that argument. Second, Your Honor, I think an example actually helps here because I think the ruling that 503B would apply. First, I think you have to come to the conclusion that there is a gap not addressed by 365 before you go to 503B. And they've never said there's a period post-filing, pre-rejection, or even after rejection that has to be filled by 503B. And the language of 365. I mean, isn't that the issue today? That is exactly the issue, Your Honor. And our position is I can cover every single period with a few provisions of 365. I can cover it with a cure. I can cover it with an unsecured claim. I don't need to cover it with 503B. And it is very interesting, and Your Honor has mentioned 503B seven a number of times. Well, if the gap period was supposed to be covered by 503B, you could look at the statutory section. You could say 503B should have an eight, and it should be the stub period rent. It doesn't say that. It doesn't say that at all. So I don't know. At the same time, 365D3 doesn't even cover residential, does it? Correct, Your Honor. But again, once Congress spoke to 365D3, avoided that issue. And once we have 365A, B, and G, every single claim is covered. 503B on the stub rent period, let's take what Judge Sanchi could have done or what judges do. I'll give you a 503B. But if I ultimately assume it, does that mean that that's not part of the cure? Are we now reading cure to only mean that pre-petition period? Do I have to top up to the rent amount? These are the issues that are created. Or aren't we really back to an accrual method? What the Second Circuit does is an accrual method. What you're looking for in this is a transaction. I read O'Brien to say there must be a transaction. What you are using is that if you rule the way that they want, 503B, is that a transaction happens each and every day that I am in that property. O'Brien concerns the claim in its entirety. Does that even apply here where prorated rent is sought? I'm sorry, I didn't understand you, Judge Alicer. Okay. O'Brien required a post-petition transaction to get a claim in its entirety. Okay? In its entirety. Does that even apply here where it is not an entire transaction but a prorated rent? I think it does, Your Honor, because I think what they were asking for is, when they use the word entirety, it's the full claim post-petition. And in order to collect that claim post-petition. How about the situation where Zagata was not overruled in O'Brien? I'm sorry. Zagata was not overruled in O'Brien. It was not overruled in O'Brien. I understand that. But what O'Brien said was you had to show a transaction of post-petition. We don't have a post-petition. In Zagata there was no post-petition transaction. In Zagata there was no post-petition transaction. I think what you can say about Zagata, Your Honor, was there was a post-petition transaction in Zagata for the following reason. If you stay in a leased property after the expiration, then every day you're a holdover tenant. It could have been a monthly. It could have been otherwise. They didn't rule on that. But you can conceive of that as a post-petition transaction. Why? There was not an extant lease in that situation. So I think the fiction of a day-to-day transaction post-filing makes more sense when you would have no contract. In our situation, there is a contract. This Court has ruled that the obligation arose and was payable on June 1st under Montgomery Ward. So you have to create a new fiction that there's some new transaction. As they say, you're not even going under the lease anymore. Well, what are we going under if it's not the lease? You're saying I have an express contract, but we don't have to rely on that contract. But what are they trying to do? They're trying to collect their contract rent. They're trying to collect their taxes, their utilities. How soon can you reject the lease? We could reject it the first day of a case, or we can reject it if we need to. We can reject it the first day of the case. And you chose not to? We chose not to, Your Honor. To be able to see your benefit to remain in the store and sell the goods in the store. Your Honor, we do not dispute the continued occupancy was a benefit to the estate. We don't believe that the rent was an actual and necessary cost, and we don't believe that there was a post-petition transaction. And what we understand the Third Circuit standard to say is you need all of those things, not merely a benefit to the estate. That's the legal issue that Your Honor has to interpret with 503B. We think there has to be a transaction. There are many bankruptcy benefits. How do you define transaction? Well, actually, we think that there has to be a, we offer you this and you accept it. They didn't offer us anything. They were required to keep us, as the courts have ruled, we were required, they were required not to terminate that lease. They could have lifted the stay the first day and said, I want you out. They didn't do that. They have the right to come in on that first day and make a motion to assume or to reject the lease. They didn't do that. So it's not as if it's just one-sided election. They've also elected not to throw us out of there knowing that we would have had this benefit. Landlords can do that, and we can stay in. But there are many benefits that a debtor enters into. So you're saying a transaction is business between two parties that is memorialized in a document? A document or an oral agreement. Mammoth-Martin, the case law that goes to that is there is an offer and acceptance post-filing. There was no separate offer and acceptance in this post-filing period. We believe that there had to be that. We were resting on our pre-petition contract to remain in possession. If they wanted to get out of that, they had the right to force a rejection, and we had the right to reject. We didn't want to get out of that, but that is not uncommon under bankruptcy law for there to be pre-petition agreements that provide post-petition benefits that ultimately get paid unsecured pre-petition claims. Thank you very much. Thank you to all counsel for very well presented arguments. We'll take the matter under advisement. We'll call the next case. Judge Ambrose.